# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:17cr482-MHT |
| | ) | (WO) |
| CYRUS PHYFIER | ) | |

## OPINION AND ORDER

Defendant Cyrus Phyfier was charged in a nine-count superseding indictment with seven drug-offense counts; one count of possession of a firearm by a prohibited person; and one count of possession of a firearm in furtherance of a drug-trafficking crime. He moved to suppress evidence obtained by law enforcement when they arrested him in a friend's apartment pursuant to an arrest warrant. This case is before the court on the recommendation of the United States Magistrate Judge that Phyfier's amended motion to suppress be denied because Phyfier lacks standing. The court held oral argument on the recommendation. Upon an independent and de novo review of the record, the court concludes that, regardless of whether Phyfier had standing as an

"overnight guest," his motion to suppress should be denied because the police saw the gun in plain view while performing a legal protective sweep after arresting him.

## I. Standing

Phyfier argued that, although he did not live at the apartment where he was arrested, he has standing to seek suppression of the evidence gathered there because he was an overnight guest in the apartment at the time of his arrest. In his recommendation, the magistrate judge concluded that Phyfier presented insufficient evidence of to establish his overnight-guest status and therefore did not have standing. Although the court bases its decision here on a ground other than standing, the court pauses here, because of the importance of the issue, to explain the error in the magistrate judge's reasoning on standing.

At the evidentiary hearing on the suppression motion, Phyfier's contention that he was an overnight guest in the apartment rested on the testimony of the leaseholder of the apartment. She testified that he was a frequent overnight guest, that he had stayed at her apartment the night before the arrest and planned to stay there the night he was arrested, and that they were romantically involved. However, immediately before Phyfier's arrest, the leaseholder had told law enforcement that he had come to her apartment that morning to use the shower because his gas was off, that he was not an overnight guest, and that she was not romantically involved with him. Dispite this contradiction, the magistrate judge made no credibility determination because he concluded that, even if he credited the leaseholder's statement that Phyfier was an overnight guest, Phyfier failed to establish standing because he did not present evidence that he had an unrestricted right of control over the apartment

3

or, specifically, the master bedroom closet.  In so finding, the magistrate judge overlooked the main Supreme Court case on overnight-guest standing and applied the wrong legal standard.

When a defendant seeks to suppress evidence obtained in a home where he was an overnight guest, the controlling case is the Supreme Court's decision in *Minnesota v. Olson,* 495 U.S. 91, 96–97 (1990).  In *Olson*, the defendant sought to suppress an inculpatory statement he made when arrested without a warrant in a home where he was an overnight guest.  In finding that Olson had standing to challenge the warrantless entry, the Supreme Court held that "Olson's status as an overnight guest is *alone enough* to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable."  495 U.S. 91, 96-97 (1990) (italics added).  In so holding, the Court rejected the State's argument that a guest should be found to have standing only when he has a key to the

4

premises, is alone in the home, and has the power to admit or exclude others; in other words, only where the guest has "complete dominion and control" over the premises. *Id*. at 98. The Court found such distinctions "not legally determinative" of Olson's standing. *Id*. Whether or not an overnight guest has complete dominion and control of the home--the Court made clear--the overnight guest has a legitimate expectation of privacy. *Id*. at 99. The Court explained: "That the guest has a host who has ultimately control of the house is not inconsistent with the guest having a legitimate expectation of privacy. ... The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household." *Id*. at 99-100

In his recommendation on Phyfier's amended motion to suppress, the magistrate judge overlooked *Olson* and mischaracterized the law on overnight-guest standing by stating: "In order to afford Defendant overnight-guest status, he must prove that he had 'an unrestricted right of occupancy or custody and control of the premises' that would create a legitimate expectation of privacy in the area of the Apartment where the firearm was discovered." Report and Recommendation (doc. no. 467) at 6 (citing *United States v. Cossio*, 336 F. App'x 909, 912 (11th Cir. 2009) (citing *United States v. Baron-Mantilla*, 743 F.3d 868, 870 (11th Cir. 1984) (quoting *United States v. Bachner*, 706 F.2d 1121, 1126 n.6 (11th Cir. 1983)))). Unfortunately, this legal standard was taken from an unpublished opinion that did not discuss *Olson* and derived its analysis from two pre-*Olson* cases. Thus, it does not matter that Phyfier "has not presented any evidence that he, regardless of whether he was an overnight guest in the

Apartment, had an unrestricted right or control over [the leaseholder's] Apartment or, specifically, the master bedroom closet." Report and Recommendation (doc. no. 467) at 7.

The magistrate judge also concluded that Phyfier showed insufficient evidence of his overnight-guest status because he relied on only the leaseholder's testimony. Courts applying *Olson* frequently consider various facts argued by the parties as evidence that a defendant was an overnight guest, such as that the defendant had personal belongings in the home, possessed keys to the home at the time of arrest, or stayed overnight more than once. *See, e.g.*, *United States v. Bain*, 155 F. Supp. 3d 107, 115–16 (D. Mass. 2015) (Talwani, J.), *aff'd*, 874 F.3d 1 (1st Cir. 2017); *United States v. Romain*, 393 F.3d 63, 68 (1st Cir. 2004). However, *Olson* did not require such evidence. The *Olson* Court did not hold or even suggest that any specific type of evidence must be presented for a

defendant to show he is an overnight guest. While the Court noted that Olson had spent the night of the robbery on the floor of the home where he was arrested and had a change of clothes with him at the duplex, it did so in a footnote; it was not setting forth these details as necessary factors to be considered. *Olson*, 495 U.S. at 97 n.6. The Court suggested that Olson stayed at the apartment for only the night before the search; thus, staying at the home more than one night is not required to show overnight status. *See id.; id.* at 96 n.5. The Court also made clear that possession of a key is not required. *See id.* at 98. Thus, a court could conclude that a defendant is an overnight guest, even if he *does not* store personal belongings in a home, *does not* possess keys to the home, and *does not* stay frequently, so long as he was an overnight guest at the time of the search.

In short, the issue is simple and straightforward: the defendant need show only that he was an overnight

8

guest. The circumstance need not include more. *See Minnesota v. Carter*, 525 U.S. 83, 96 (1998) (Scalia, J., joined by Thomas, J., concurring) (although overnight guest status may be at "the absolute limit of what text and tradition permit" under the Fourth Amendment, it is still within the limits of the Fourth Amendment). Therefore, Phyfier's evidentiary burden to show overnight status was not as heavy as the magistrate judge suggested.

While the court could remand Phyfier's suppression motion back to the magistrate judge to determine which of the leaseholder's statements about Phyfier's overnight-guest status he credits, doing so is not necessary, for Phyfier's motion is due to be denied for another reason.

## II. Protective Sweep

Phyfier seeks to suppress the gun found in the closet of the master bedroom during a protective sweep

of the apartment immediately following his arrest and his spontaneous statement that the gun was his. The government contends that the gun was in plain view in the open closet when the officer entered the bedroom during the sweep. Phyfier contends that the officers had no reason to perform a protective sweep because they had information that no one else was in the apartment.

As an initial matter, the police had a warrant to arrest Phyfier and were entitled to enter the leaseholder's apartment to execute it because they knew Phyfier was there.* "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives ... when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). While Phyfier was not arrested in his own

---

* Accordingly, whether the leaseholder consented to the initial entry is a non-issue for current purposes.

home, that does not matter. "[T]he subject of an arrest warrant cannot challenge the execution of [an arrest] warrant ... in a third-party's home" so long as the officer had "reason to believe the person named in the warrant is present." *Willis v. Arp*, 165 F. Supp. 3d 1357, 1364 (N.D. Ga. 2016) (Totenberg, J.) (quoting *United States v. Hollis,* 780 F.3d 1064, 1068–69 (11th Cir. 2015)). This is so because "[a] person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's [F]ourth [A]mendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another." *Id.*, 780 F.3d at 1068.

After arresting Phyfier in the apartment, the officers were permitted to conduct a limited protective sweep of the apartment. In *Maryland v. Buie*, the Supreme Court held that, "as an incident to the arrest

the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. 325, 334 (1990). To justify a protective sweep beyond the immediately adjoining areas, however, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

At oral argument on the magistrate judge's recommendation, Phyfier and the government agreed that the bedroom where the gun was found was immediately adjoining the living room, where Phyfier was arrested. Thus, it was lawful for the police to conduct a protective sweep of the bedroom even absent any

articulable facts warranting a belief that anyone else was in the apartment and posed a danger.

The remaining issue is whether the gun, which was found in the bedroom closet, was in plain view once the police entered the bedroom. Phyfier and the government agreed that the closet door was open; however, Phyfier argued that the gun was not in plain view because it was hidden under a pillow. The evidence is indisputable from an examination of original photographs, and the court so finds, that, although part of the gun was under a pillow, an identifiable portion of the gun was in plain view. *See* Government Exhibit 2. Thus, the court holds that the protective sweep was lawful, and that the gun was properly seized because it was in plain view. *See, e.g.*, *United States v. Sunkett*, 95 F. Supp. 2d 1367, 1369 (N.D. Ga. 2000) (Story, J.) (upholding the legality of a protective sweep where the evidence was found in plain view in a closet in the bedroom, which adjoined the place of

arrest). Finally, because the seizure of the gun was legal, Phyfier's spontaneous statement that the gun was his is not fruit of the poisonous tree.

***

Accordingly, it is ORDERED as follows:

(1) The defendant's objections (doc. no. 468) are overruled.

(2) The recommendation of the United States Magistrate Judge (doc. no. 467) is adopted, albeit for a reason different from that given.

(3) The amended motion to suppress (doc. no. 391) is denied.

DONE, this the 12th day of June, 2019.

                                  /s/ Myron H. Thompson
                               **UNITED STATES DISTRICT JUDGE**